UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
DIXON CORPORATION,
    Debtor.

No. 11-09-14915 SA

**MEMORANDUM OPINION IN SUPPORT OF ORDER
APPROVING IN PART AND DENYING IN PART
DEBTOR'S MOTION TO EMPLOY ATTORNEYS
[LAW OFFICE OF GEORGE DAVE GIDDENS, P.C.]**

The Debtor's Motion to Employ Attorneys [Law Office of George Dave Giddens, P.C.] – "Applicant" or "Firm" -- (doc 5; Rule 2014 and 2016 statement doc 6) came before the Court for a final hearing on January 13, 2010. Applicant has requested approval of a range of rates for the attorneys and paralegals who work at the Firm, including a rate of $275 per hour for the services of the senior member of the Firm, George (Dave) Giddens, who up to now has been approved by this Court for a rate not to exceed $250 per hour. The Court finds that, in this case, the requisite showing justifying the $275 per hour rate has not been made, and therefore denies that part of the application, without prejudice to Applicant raising the issue in a fee application.

To be clear, the Court is not ruling that the evidence showed that Mr. Giddens should not be compensated at the higher rate; rather, the Court is ruling that the proof in this particular instance was inadequate. For that reason, the Court is denying the application without prejudice to the issue being raised in the context of one or more fee applications, a

Case 09-14915-s7    Doc 73    Filed 04/15/10    Entered 04/15/10 14:51:26 Page 1 of 10

procedure which this case and other circumstances have led the Court to now adopt. The Court will allow the Debtor in Possession to compensate the Firm for Mr. Giddens' time at the higher rate for purposes of the standard 75% interim payment provision; that is, the Court will allow the Debtor in Possession to pay the Firm on an interim basis $206.25 per hour for Mr. Giddens' services.

At the hearing, Mr. Giddens testified extensively, and supported his testimony with 14 exhibits. What the evidence showed was, among other things, that Mr. Giddens has a long (27 years) and varied history of bankruptcy representations; that Mr. Giddens delegates work in his firm such that his legal work is more high-end strategizing and litigation; that the firm's overhead is continually going up; that the firm has a collection rate of about 61% ranging perhaps to about 75% of what is billed; and that Mr. Giddens has a steady stream of clients which he says demonstrates that he provides good value to his clients.

Importantly, Mr. Giddens also provided evidence about rates being charged by other attorneys.[1] He cited hourly rates ranging

---

[1] The Code, in § 330(a)(3)(F), places particular emphasis on this factor, which is only one of the twelve factors set out in <u>Johnson v. Georgia Highway Express. Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), adopted by the Tenth Circuit in <u>First Nat'l Bank of Lea County v. Niccum (In re Permian Anchor Services)</u>, 649 F.2d 763, 768 (10th Cir. 1981). This emphasis reflects the importance that Congress attached to abandoning the policy of "conservation of the estate and economy of administration" that characterized pre-Code bankruptcy practice. <u>See</u> H.R. Rep. No. 595, 95th Cong.,

from $230 to $350 in bankruptcy cases in the District of New Mexico for creditor and debtor representation, and hourly rates for non-bankruptcy work (all more or less similar to bankruptcy litigation) for senior litigators from one large law firm ($310), a domestic relations firm ($350), and a "Southwest Super Lawyer" ($250 out of court, $275 in court).

The Court does not dispute most of what Mr. Giddens testified to, in particular Mr. Giddens' employment history, his delegation and reservation of duties, the increase in Applicant's overhead, the collection rate, and the steady stream of clients. However, the bankruptcy attorney rates cited by Mr. Giddens were in several instances rates which the Court has not approved, but instead are being sought by the different practitioners. Thus, citing those rates is somewhat like trying to prove up the value of real estate by citing the prices at which various comparable parcels are being offered for sale rather than what those other parcels ultimately sell for. The Court does not find that evidence especially persuasive.

Similarly, the non-bankruptcy attorney rates are for attorneys who clearly are at the pinnacle of practice in their respective areas. The evidence, with the exception of the

---

1st Sess. 329 (1977). The specific language of section 330(a)(3)(F) was added to the Code by the 1994 amendments as section 330(a)(3)(E). Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 224, 108 Stat. 4106, 4130-31 (1994).

Case 09-14915-s7    Doc 73    Filed 04/15/10    Entered 04/15/10 14:51:26 Page 3 of 10

affidavit for the large law firm, did not cover the range of rates in those non-bankruptcy areas. And Counsel conceded in any event that what he presented was not an "exhaustive study".

The Court also notes the following with respect to this or any application for employment, or for that matter for compensation, by a professional:

1. Years in service is only a beginning measure of the worth of services rendered by the professional. It is frequently assumed that 20 years of experience justifies a higher rate than, say, one year of experience. Often the assumption is reasonable, since it is quite unlikely that a first-year lawyer has as much skill and knowledge and wisdom to impart as an attorney who has practiced for 20 years. Yet it is possible, and occasionally true, that a twenty-year lawyer in effect repeats her or his first year twenty times, effectively learning little more than a competent first year attorney may know at the end of her or his first year.[2]

2. An applicant's overhead is not necessarily relevant for purposes of determining rates. Rates are determined by the market and applicant's qualifications. To permit a higher rate to one applicant rather than another would be to permit a higher rate based on a factor that has nothing whatever to do with the

---

[2] The Court notes emphatically that this comment in not applicable to Mr. Giddens or others in the Firm.

quality of services provided, and in fact might result in an applicant being rewarded for spending more money on office location, furniture and furnishings, salaries, etc.

3. Similarly, an applicant's collection rate is only somewhat relevant (if indeed it is relevant at all) to the rate charged in a given bankruptcy case. While the Court is certainly sympathetic to the problems of collecting for work done, for the most part the work done in a given case should be proportionate to what is required to get the job done and to what resources in the estate are available to pay for that work.

4. The Court notes that supporting affidavits from other attorneys who practice in this court, or even from those who do not practice in this court, come tinged with some self interest of the makers of those affidavits. First, in the (fortunately) very collegial atmosphere that generally characterizes bankruptcy practice in this district, it would be presumably quite difficult to turn down a request for an affidavit attesting to a colleague's competence and entitlement to a certain rate. There is simply little to be gained by refusing to go along with a colleague's request, so easily complied with, to sign such an affidavit, especially when that refusal may well be taken as a personal affront by the requesting attorney and make practicing in this district and representing clients significantly more difficult for years to come.

In addition, an attorney supporting the request for a higher rate may well be in effect providing support for a request by that attorney for a higher rate for herself or himself at a later (or even the same) time. To be clear, the Court is not accusing anyone of dissembling, but merely pointing out at least two incentives for supporting Applicant's position that a number of the affiants will ordinarily have. For this reason, it is particularly important that the United States Trustee's office take an active role in examining and challenging employment and fee applications on this issue, since presumably that office is immune from the above-described financial incentives if not the social ones. (That is, an attorney angered by a challenge to her or his billing rate may as easily revile someone from the UST's office as easily as she or he can revile any other attorney.)

Therefore the Court finds that this specific part of the employment application must be denied, but without prejudice to asking for the higher rate in a fee application.

The Court conducted the final hearing on this issue because it has been the Court's practice to require, in connection with the employment application, a justification from any attorney representing a debtor for an hourly rate in excess of $200 per hour, or for an increase in any rate above $200 per hour which this Court had already approved. The Court has taken this approach for a number of years for several reasons, among which

are the following: First, the Court considered that everyone in a case was entitled to know what the rates were that were being charged by any professional, including attorneys, before or shortly after the work began. Second, having the rate set by the Court at the outset of the work allows a firm to more reliably budget for itself. Third, formal rulings at the beginning of every applicable case would allow other practitioners to more readily determine what is the market for the services at issue.

However, the Court is also well aware that the other bankruptcy judge in this district has adopted a policy of not ruling on rates except in the context of a fee application (and only then as may be required). Having conferred with Judge Jacobvitz about this at some length, this judge has decided to pursue that approach, at least on an interim basis, for several reasons.

First, the difficulty for counsel in obtaining the data on comparable rates for comparable types of work is one reason that justifies looking at rates from a somewhat retrospective perspective in the context of a fee application. That is not to say that the standard set out in the § 330(a)(3)(F) – "whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other cases under this title" – is not applicable, but merely that looking back on the work done to date will allow the Court

Case 09-14915-s7    Doc 73    Filed 04/15/10    Entered 04/15/10 14:51:26 Page 7 of 10

to also assess more accurately the complexity of the work done and therefore what the comparable complexity of work might be in other contexts. See, for example, In re Romero, 2010 WL 964209 (Bankr. D. N.M. 2010).

Of course, putting off a decision about rates of compensation until the fee application stage does not eliminate the difficulties of proof, some of which are identified in this decision. Mr. Giddens in this case and other counsel have pointed out that law firms do not universally publish their billing rates or at least routinely make them available to just any practitioner who asks. So to a real extent that problem will remain.

Second, noticing out the decision on rates later in the case in the context of a fee application will be likely to generate more attention, as opposed to the beginning of the case when such an issue may be obscured in the rush of organizing, starry-eyed optimism, and lack of information that frequently characterizes the beginning of a case.

Third, ruling on rates later in the case rather than at the outset may avoid the potential problem of permitting a certain rate that in retrospect turns out to be too high or too low but cannot be changed by virtue of section 328(a).[3]

---

[3] That section provides in part as follows: Notwithstanding such terms and conditions [of employment], the court may allow compensation different

Fourth, it may be that the issue of rates will resolve itself without the need for an adjudication. For example, if no other party objects to a certain rate being charged, and the charge to the estate overall for the work done and the result accomplished is quite reasonable, then the Court could enter an order approving the overall compensation requested without having to rule on the specific rate requested.[4]

For the foregoing reasons, the Debtor's Motion to Employ Attorneys will be granted, except that it will be denied, without prejudice, on the issue of a rate of $275 per hour for the services of Mr. Giddens, for whom Applicant may nevertheless bill and be compensated on an interim basis bill at that rate.

_/s/ James S. Starzynski_
Honorable James S. Starzynski
United States Bankruptcy Judge

---

from the compensation provided under such terms and conditions after the conclusion of such employment if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

[4] Of course the Court retains the right, if not the duty, to examine the reasonableness of any fees, on its own motion. Compare In re Albrecht, 233 F.3d 1258, 1260 (10th Cir. 2000) (trial court may examine reasonableness of fees in the absence of an objection) with In re Albrecht, 245 B.R. 666, 672 (10th Cir. B.A.P.), aff'd., 233 F.3d 1258 (10th Cir. 2000)(trial court has obligation to review fee applications even in the absence of an objection)(citing In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 841 (3d Cir. 1994) and In re Cascade Oil Co., 126 B.R. 99 (D. Kan. 1991)).

Date Entered on Docket:  April 15, 2010

Copies to:

George D Giddens, Jr
10400 Academy Rd NE Ste 350
Albuquerque, NM 87111-1229

Christopher M Gatton
Law Office of George Dave Giddens, PC
10400 Academy Rd., #350
Albuquerque, NM 87111

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608